RIDINGER *v.* RYSKAMP.

1. COMPROMISE AND SETTLEMENT—CONSTRUCTION OF AGREEMENT—
RIGHT OF FIRST REFUSAL TO PURCHASE.

Agreement in settlement of dispute as to property theretofore
held in joint names of elderly woman and her adopted daughter
and latter's husband, whereby the latter were accorded the
right of first refusal to purchase the property by matching
the terms of the best offer received by the mother, *held*, to
have accorded the right only if the mother made what is
commonly known as a market sale, a sale to the highest bidder.

2. DEEDS—SALES—GIFT—LOVE AND AFFECTION—EVIDENCE.

Deed by elderly sister to her 2 brothers of property occupied by
her adopted daughter and latter's husband *held*, not shown to
be a sale rather than a gift in suit by the daughter and
husband to set aside the deed, merely because the brothers
had expressed at the time of the grant that they would have
continued to have taken care of her and provided a decent bur-
ial without the grant of the property to them, and the deed ex-
pressed the consideration therefor was love and affection.

3. SAME—GIFTS—FINDING OF COURT—EVIDENCE.

Finding of trial court that deed by 75-year-old woman, suffering
from a heart ailment, for the expressed consideration of
love and affection, given to her 2 brothers with whom she
had maintained a close family relationship, was a *gift* and
*not a sale* for their alleged agreement to take care of her
for the remainder of her life and to provide a suitable burial
*held*, supported in suit by woman's adopted daughter and
husband, from whom she had become estranged prior to death,
to set aside the deed and accord them the first refusal to pur-
chase the property in the event it were sold as claimed under
a compromise agreement with respect to the property.

REFERENCES FOR POINTS IN HEADNOTES

[1] 11 Am Jur, Compromise and Settlement § 24.
[2, 3] 16 Am Jur, Deeds §§ 57–61, 357; 24 Am Jur, Gifts §§ 33, 114–
133.

Appeal from Kent; Searl (Fred N.), J. Submitted December 6, 1962. (Docket No. 105, Calendar No. 49,713.) Decided December 31, 1962.

Bill by Carolyn Ridinger and Clifford K. Ridinger against Albert Ryskamp and William Ryskamp, individually, and against Robert G. Quinn, Jr., administrator of the estate of Kathryn Broek, deceased, to set aside deeds and, following accounting, to obtain, from administrator of the estate, specific performance of contract giving them right to purchase property by matching terms of offer. Bill dismissed. Plaintiffs appeal. Affirmed.

*Bergstrom, Slykhouse & Van Orden,* for plaintiffs.

*William N. Azkoul,* for defendants.

KELLY, J. This is an appeal from a decree of the circuit court for the county of Kent finding that a transfer of property by deceased, Kathryn Broek, to her brothers, Albert and William Ryskamp, was a gift, transferred "for and in consideration of love and affection." Plaintiffs (Mrs. Broek's adopted daughter and her husband) contended the transfer was a sale and, hence, in violation of an agreement which provided plaintiffs would have the first opportunity to purchase said property if deceased desired to sell same.

Kathryn Broek owned 2 residential properties near Bostwick Lake, Kent county, both parcels having at 1 time been held jointly with her daughter, Carolyn Ridinger. One parcel was occupied by Mrs. Broek and the other by the Ridingers. Question arose as to Clifford Ridinger's right to hold a school board office when he was not a property owner, and Mrs. Broek was requested to also put his name on the property. This she did, so that both pieces of

property were held jointly between the Ridingers and Mrs. Broek.

Ill will arose between the parties and in 1957 Mrs. Broek instituted suit against her daughter and son-in-law to have their names removed from the record title of both pieces of property. The relationship degenerated to the point where Mrs. Broek's Christmas gifts to her grandchildren were returned by mail, and testimony of witnesses indicated the neighbors did her shoveling and brought her food, even though the daughter lived only a few yards away. The following testimony of plaintiff Carolyn Ridinger indicates the bitterness that existed between the parties:

"*Q.* Is it true, Mrs. Ridinger, according to what the witnesses have stated or some particular witnesses have stated that neighbors in the neighborhood where you lived and your mother lived did certain things for your mother, such as shoveling the walk and taking in food?   *   *   *

"*A.* After my mother became angry at me, yes, they did because we were, my husband was, at least, forbidden to step on her property. Of course she told me to get out and stay out.

"*Q.* And because she asked you to give her back the deed to the property and you wouldn't do it?   *   *   *

"*A.* I don't understand. Because she asked me to give back the deed?

"*Q.* She told you she didn't want you to come into the house any more?

"*A.* Yes.

"*Q.* Is that because you wouldn't give her property back that you took?

"*A.* That is right."

The extent of the animosity that existed is further highlighted by the fact that Carolyn Ridinger was not with her mother at the time of her death, did not

call on her at the hospital; made no effort to attend to funeral arrangements and, in fact, did not even go to the funeral home until 2 days after her mother's decease on June 20, 1958. She testified:

"I knew she was ill, yes. * * * I didn't see what good I could possibly do at the hospital. I was afraid my presence might upset her further.

"Q. What feeling did your mother have for you?

"A. She was very angry with me."

The relationship between Mrs. Broek and her brothers was a very close one. They were deceased's only brothers, and the record discloses that they delivered groceries to her from time to time, performed other services, such as repairing her furnace, tending to her automobile, et cetera, and in many ways showed their affection for their sister.

On February 7, 1958, subsequent to the institution of the above-mentioned suit, a settlement agreement was reached between Mrs. Broek, her daughter and son-in-law, wherein Mrs. Broek was to deliver to an escrow agent (Martin Klein), a quitclaim deed to the parcel occupied by Mr. and Mrs. Ridinger, and the Ridingers were to simultaneously deliver to the escrow agent a quitclaim deed to Mrs. Broek of the parcel occupied by her. Paragraph 9 of the agreement, upon which plaintiffs rely, is as follows:

"If first party (Broek) shall ever desire to sell the last above described property, she shall permit to second parties (Ridingers) the right of first refusal to purchase the property last above described by matching the terms of the best offer received by first party."

Less than one week after the settlement agreement was entered into, Mrs. Broek (on February 13, 1958) executed a quitclaim deed to the second parcel described in the agreement, the parcel occupied by her, to her brothers, William and Albert Ryskamp, re-

serving a life estate to herself, the consideration for said deed being "love and affection." On the same day Mrs. Broek also executed a bill of sale to her brothers, covering all personal effects, the consideration therefor being also "love and affection."

Plaintiffs were notified (February 14, 1958) by the escrow agent of the recording of the deeds held by him and of the deed conveying Mrs. Broek's parcel to the Ryskamps.

Plaintiffs claim Mrs. Broek's brothers in consideration of such transfer agreed to care for the deceased and to pay her funeral expenses and, therefore, the transaction constituted a sale and not a gift and that under the provisions of paragraph 9 of the settlement agreement, above quoted, plaintiffs had a right of first refusal to purchase the property by matching the terms of the best offer received by Mrs. Broek; that defendants Ryskamps knew of the terms of paragraph 9 and are now bound by it and should be required to reconvey to the estate of Kathryn Broek the parcel deeded to them. Plaintiffs assert they are entitled to purchase the parcel from the Broek estate at the value of the consideration of the "sale" to the Ryskamps.

Defendants contend the transfer of the property was a gift under authority of paragraph 3 of the settlement agreement and was not a sale as contemplated by paragraph 9. Paragraph 3 provides:

"Only in the event that first party desires to sell or give away or mortgage the property or any part thereof last above described, said Martin Klein, escrow agent, shall deliver to first party said escrowed deed running to first party, as grantee, and covering the property last above described, to finally complete such sale or gift or mortgage."

Defendants further contend that the consideration for the deed was love and affection, trust and con-

fidence, which plaintiffs could not furnish because of the admitted strained relationship and ill feelings between plaintiffs and deceased.

The agreement entered into between plaintiffs and Mrs. Broek discloses that it was the intention of the parties that the only right plaintiffs would have to match the terms of the best offer would arise only if Mrs. Broek made what is commonly known as a "market sale," that is, a sale to the highest bidder.

The record sustains the conclusion that the defendant brothers would have continued to have taken care of their sister and provided for a decent burial without the grant of the property to them, and their expression at the time of the grant that they so intended does not constitute proof that the deed should be considered as a "sale" and not a "gift."

The court in a well-prepared opinion definitely sets forth his reasons for dismissing plaintiffs' bill of complaint, and we adopt, with complete approval, his findings, as follows:

"But we do know these things: Mrs. Broek wished to make the transaction a gift. She knew and was advised by her attorney that she could not make a sale of the premises without her daughter and son-in-law claiming the right of first refusal under paragraph 9. She knew she could make a gift to whom she chose. She deliberately chose to make a gift. Her attorney, acting for her, stated the consideration to be 'love and affection.' He did not insert as a careful attorney would have, language imputing an agreement to support or pay funeral expenses, if such agreement existed.

"I am convinced that the statement of the consideration to be 'love and affection' was exactly a true statement of the intended consideration and that Mrs. Broek did not want to do anything that would change the transaction into a sale. Mrs. Broek had trust and confidence in her brothers to see that she would never want. The family relationship was a

close one and she would have had the same trust and confidence if she had had no property. She was 75. She suffered from a heart ailment and she knew that her days were numbered.

"If Mrs. Broek wished the transaction to be a gift, if her attorney so drew the title paper as to make it a gift, if she deliberately refrained from taking a consideration for the deed—should the daughter— or the court refuse to permit her the right to make that gift? *   *   *

"I think that the court should give effect to the real intention and purpose of Mrs. Broek and that it should not read into the transaction the consideration sufficient to constitute it a sale—something that Mrs. Broek deliberately refrained from putting into it and which she did not want to be in it.

"Accordingly, I find as a fact and as a matter of law that the transfer of title to the real property on February 13th, 1958 to the defendants Ryskamp was a gift authorized by paragraphs 3 and 4 of the settlement agreement and that it was not a sale within the meaning of that term as used in paragraph 9. The second point made by defendant also has considerable merit. If the transaction were a sale, as claimed by plaintiffs, the consideration consisted not only of an agreement to support and pay expenses of last illness and burial, but also of love and affection and depended upon trust and confidence in the grantees.

"This last, the Ridingers could not give Mrs. Broek. They had lost her trust and confidence. They not only had not shown her love and affection for a considerable period, but had refused her attempts to show her love and affection for their children—her grandchildren. It is easy now they know that she died within 4 months after the execution of the deed to say they would have been willing to undertake in 1958 the obligation to support their mother, pay her funeral expenses and give to her love and affection, but at that time, they were not showing her any love or affection and they were doing nothing which showed either the desire or the

ability to perform such an arrangement. They never changed their course of conduct until her death.

"Love and affection would not have been mere formal words, it would have been a real and indispensable part of the arrangement. It would have been impossible, under the said relationship that then existed between the mother and daughter and the son-in-law, for the Ridingers, to have matched the consideration which the brothers Ryskamp are alleged to have given for the deed."

Affirmed. Costs to appellees.

CARR, C. J., and DETHMERS, BLACK, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.

# NOTICE

Commencing with the JANUARY, 1963, term of court, the *docket* number of a case is the number assigned to it when it reaches the clerk's office. This previously was designated as *calendar* number. The *calendar* number, from now on, is the number assigned to a case on the term calendar. This, previously, was designated as *docket* number. This change is in accord with GCR 1963, 816, as amended. —REPORTER.