*In re* RUDELL ESTATE
*In re* RUDELL TRUST

Docket Nos. 287330 and 287332. Submitted November 3, 2009, at Detroit. Decided December 10, 2009, at 9:00 a.m.

Carla Bufe, as personal representative of the estate of Jane E. Rudell, deceased, and as trustee of the Jane E. Rudell Trust, petitioned the Oakland County Probate Court for an order quieting title to a certain parcel of real property in the trust. Respondent, William A. Rudell, the decedent's son, claimed the property as a result of a quitclaim deed executed before the decedent's death through which she purportedly transferred the property to the respondent for the consideration of $400,000. Respondent admitted that he never paid the $400,000 and claimed that he had received the property as a gift from the decedent. Petitioner, the decedent's daughter, claimed that the deed's recital of valuable consideration was evidence that the intent was to sell the property to respondent. The court, Barry M. Grant, J., considered both actions together and granted summary disposition in favor of petitioner and ordered the property reconveyed to the trust, basing its decision on the failure of consideration. Respondent appealed separately the order with regard to the estate and the trust, and the appeals were consolidated.

The Court of Appeals *held*:

1. The general rule that a complete or substantial failure of consideration may justify the rescission of a written instrument is not strictly applicable in the context of property transfers between a parent and a child. Where there are no outstanding claims against the property by creditors of the estate, a deed from a parent to a child that expresses a valuable consideration is valid, although no valuable consideration is passed. Because there was no evidence of outstanding claims in this case, respondent's failure to pay the recited consideration was not alone sufficient to justify the cancellation or rescission of the deed.

2. The probate court erred in concluding that the absence of a signed gift tax return by the decedent was conclusive evidence that the property was not given as a gift. The court erred in ruling that respondent was required to present written confirmation of the gift.

3. The rule in Michigan is that a recital of valuable consideration in a deed is not conclusive proof that the property was actually sold for value. The consideration recited in a deed is not conclusive, and may afterwards be inquired into. The recital of valuable consideration was prima facie evidence, not conclusive proof, that the decedent intended to sell the property to respondent for value. A material issue of fact existed regarding whether the decedent intended to give the property to respondent as a gift. Summary disposition was improperly granted.

4. Once a deed has been reduced to writing and the conveyance has been made, the statute of frauds, MCL 566.106, does not foreclose a subsequent inquiry into the consideration recited in the original deed. Any attempt by respondent to rebut or contradict the deed's recital of valuable consideration by way of oral evidence would not violate the statute of frauds. The probate court erred in ruling that the statute of frauds barred respondent from proving that the decedent acted with the requisite donative intent in this case.

5. Parol evidence was admissible to prove that the decedent did not actually intend to sell the property for value, despite the otherwise plain and unambiguous language of the deed reciting a valuable consideration of $400,000. While the consideration expressed in a written instrument is prima facie to be taken as the actual consideration, parol evidence is admissible to show that the true consideration was different from that expressed. The order granting summary disposition must be reversed and the case must be remanded for further proceedings during which, assuming that it is otherwise admissible, respondent may introduce parol evidence to show that the true consideration was different from that expressed in the deed.

Reversed and remanded.

1. DEEDS — CONSIDERATION — PARENT AND CHILD.

The general rule that a complete or substantial failure of consideration may justify the rescission of a written instrument is not strictly applicable in the context of property transfers between a parent and a child; a deed from a parent to a child that expresses valuable consideration is valid although no actual consideration passed, where there are no outstanding claims against the property by creditors of the parent's estate.

2. DEEDS — GIFTS —GIFT TAX RETURNS.

Although the filing of a gift tax return may tend to show that a gift has been made, the absence of such a return is not conclusive evidence that a conveyance by a deed was a sale rather than a gift; the presence of a gift tax return is not conclusive evidence that a gift was made.

3. DEEDS — GIFTS — CONSIDERATION — PAROL EVIDENCE.

A recital of valuable consideration in a deed is not conclusive proof that the property was actually sold for value but rather is prima facie evidence of a sale; the consideration recited in a deed is not conclusive and can be inquired into afterwards for the purpose of establishing that the conveyance was actually made as a gift; parol evidence may be used for such purposes.

4. STATUTE OF FRAUDS — DEEDS — CONSIDERATION — PAROL EVIDENCE.

The statute of frauds does not foreclose a subsequent inquiry into the consideration recited in a deed once a deed has been reduced to writing and the conveyance has been made; an attempt to rebut or contradict a deed's recital of valuable consideration with parol evidence does not violate the statute of frauds (MCL 566.106).

*The Giles Law Firm* (by *Thomas V. Giles* and *Molly Giles*) and *Jaffe, Raitt, Heuer & Weiss, P.C.* (by *Brian G. Shannon* and *Elizabeth Luckenbach Brown*), for petitioner.

*Lauren M. Underwood, P.C.* (by *Lauren M. Underwood, Priscilla V. Hirt,* and *Kristin A. Edwards*), for respondent.

Before: SHAPIRO, P.J. and JANSEN and BECKERING, JJ.

JANSEN, J. In these consolidated appeals, respondent William A. Rudell appeals by right the probate court's order quieting title to a certain parcel of real property in the Jane E. Rudell Trust (the trust).[1] For the reasons set forth in this opinion, we reverse and remand for further proceedings.

---

[1] Lest there be any confusion on this matter, we wish to make clear that the probate court had jurisdiction to hear and resolve the present quiet-title dispute. The probate court has concurrent legal and equitable jurisdiction to determine property rights and interests with respect to an estate of a decedent, a protected individual, a ward, or a trust. MCL 700.1303(1)(a).

I. BASIC FACTS AND PROCEDURAL HISTORY

Jane E. Rudell (the decedent) died testate on July 2, 2003. The decedent was survived by her daughter Carla Bufe, her son William A. Rudell, and two children of her deceased daughter Lucinda Maunder. The decedent's will was admitted to probate in October 2003. The will listed the trust as the sole residual beneficiary of the decedent's estate. Petitioner Carla Bufe is both the personal representative of the decedent's estate and a trustee of the trust.

During her lifetime, the decedent owned a certain parcel of residential real property located at 1170 Chesterfield in Birmingham, Michigan (the property). In 1982, the decedent properly transferred ownership of the property to the trust. According to the complaint filed in this matter, the decedent began to exhibit symptoms of dementia and had become mentally incapacitated by 1999. Between 1999 and the time of the decedent's death in 2003, respondent William A. Rudell cared for the decedent and managed her financial and personal affairs. According to petitioner, the decedent's memory had greatly deteriorated by this time. For example, petitioner alleged that the decedent had forgotten how to sign her name on a check and had begun referring to respondent as her "husband," even though he was actually her son. Petitioner asserted that the decedent "required 24-hour supervision due to her feeble and infirm condition . . . ." It is beyond serious factual dispute that respondent provided such 24-hour supervision during the final years of the decedent's life.

A quitclaim deed was executed on February 6, 2000, purporting to transfer the property from the trust to "Jane E. Rudell, a single woman" for the consideration of ten dollars. The quitclaim deed was signed by the decedent as a "Trustee" of the trust. The deed was

witnessed and signed by Harold J. Meloche and Susan Joyce Everhart. A second quitclaim deed was also executed on February 6, 2000. This second deed purportedly transferred the property from the decedent to respondent for the consideration of "$400,000 paid by the [respondent]." The second deed was signed by the decedent in her individual capacity. Like the first deed, the second deed was also witnessed and signed by Harold J. Meloche and Susan Joyce Everhart. Everhart, who was a notary public, notarized both deeds.

Neither the first deed nor the second deed was recorded during the decedent's lifetime. Respondent recorded the deeds on July 2, 2003, the very day of the decedent's death. A real estate transfer tax of $440 was paid on the second deed. Following the decedent's death, respondent claimed exclusive fee simple ownership of the property.

Petitioner, as personal representative of the estate and as trustee of the trust, sued in October 2003, alleging, among other things, that the property had never been properly transferred to respondent. In count II of the amended complaint, petitioner alleged that respondent had never paid the decedent the consideration of $400,000 due under the second deed. Petitioner further alleged that "on the dates set forth in the purported deeds, [the decedent] was not of sound mind nor of sufficient competence to execute such conveyances," that the decedent "never intended to vest [respondent] with sole and exclusive fee simple ownership of her residence, thereby disinheriting the other surviving members of her family," that "[t]he deeds, themselves, and the circumstances surrounding their execution, lack circumstantial guarantees of trustworthiness required to evidence [the decedent]'s purported intent to transfer her residence outright to [respon-

dent] as the sole and exclusive owner of the property," and that respondent had procured the deeds through "fraud, overreaching, undue influence and/or coercion . . . ." Petitioner asserted that the deeds were "invalid and of no legal force or effect," and that title to the property should therefore be returned to and quieted in the trust or the estate.[2]

During discovery, in response to petitioner's requests for admission, respondent admitted that he had "never paid Jane E. Rudell $400,000.00 in exchange for all her rights, title and interest in the Property" and that he had "never paid Jane E. Rudell or any Trustee of the Jane E. Rudell Trust $400,000.00 for any . . . rights, title and interest in the Property." However, respondent denied petitioner's suggestion that the decedent had been "incapable of managing her own financial affairs" at the time the deeds were executed. In response to petitioner's first set of interrogatories, respondent asserted that he had received the property as a "gift" from the decedent on February 6, 2000.

On June 15, 2005, petitioner moved for summary disposition of count I of the complaint pursuant to MCR 2.116(C)(10). Petitioner contested respondent's assertion that the property had been given as a gift. Petitioner argued that such an assertion was unsupported by the record because there was no evidence that the decedent had acted with donative intent. Moreover, petitioner argued that respondent had never paid the decedent the $400,000 due under the second deed. Accordingly, petitioner asserted that the deed was invalid for failure of consideration.

Petitioner submitted medical records indicating that, as of 1999, the decedent was "suffering from multi-

---

[2] Count I of petitioner's amended complaint sought an accounting and requested money damages from respondent.

infarct dementia," was "mild[ly] confused," was suffering from "episodes of confusion [and] memory loss," and had occasional "difficulty expressing herself." Petitioner also argued that it was highly unlikely that the decedent had given her principal residence to respondent as a gift because such a large gift, as compared to the decedent's relatively few other assets, "would have dispossessed Mrs. Rudell of 80% of her assets, rendering her virtually indigent." Petitioner pointed to the terms of the decedent's trust, which expressed an intent that the decedent's surviving children Carla Bufe and William A. Rudell would share equally in her assets upon her death.[3] Petitioner argued that because the property was far and away the decedent's single largest asset, a gratuitous transfer of the property to respondent would have defeated this intent.

Petitioner noted that respondent had paid a real estate transfer tax of $440 at the time the second deed was recorded. According to petitioner, this tax payment established that the property was sold to respondent for value rather than given to him as a gift. Petitioner also argued that the second deed's recital of valuable consideration in the amount of $400,000 was unmistakable evidence that the decedent had intended to sell the property to respondent rather than give it to him as a gift. Petitioner contended that respondent could not demonstrate that the decedent had orally waived the $400,000 price because evidence of any such oral waiver would violate the statute of frauds.

---

[3] Specifically, the trust document provided for an initial distribution of 10 percent of the assets to the two children of the decedent's deceased daughter, Lucinda Maunder. The document went on to provide that, following this initial 10-percent distribution, "[t]he balance of the trust estate . . . shall be divided into two (2) equal shares," with one payable to Carla Bufe and the other payable to William A. Rudell.

Respondent opposed petitioner's motion. He noted that he had been the decedent's caretaker for the final years of her life and asserted that the decedent had given him the property as a gift. Respondent argued that the decedent was not mentally infirm at the time the deeds were executed in February 2000, and contended that she had been fully aware that she was transferring the property to him as a gift. According to respondent, it was petitioner's "burden to come forward with *something* that would indicate [that the decedent] didn't want [respondent] to have the [property], and she hasn't met that burden." In response to petitioner's motion, respondent submitted his own affidavit, as well as the affidavits of Harold J. Meloche and Susan Joyce Everhart.

Respondent averred in his affidavit that "Mom wanted to put the [property] in my name because I promised to take care of her until the day she died, and that she would never go into a nursing home." According to respondent, petitioner insisted that the decedent should be placed in a nursing home, and this "scared" the decedent. Respondent averred that petitioner's insistence on placing the decedent in a nursing home caused the decedent to change her mind about the terms of her trust; respondent contended that the decedent no longer "want[ed] [petitioner] to have anything" but "did not trust [her attorney] to write [the trust] up this way." However, according to respondent, the decedent "knew that if the house was in my name, I would get it and [petitioner] would not. She knew she could put the house in my name and she would not have to change her trust." Respondent maintained that the decedent had given him the property as a gift and that the decedent had been coherent and lucid at the time the deeds were executed in February 2000. According to respondent, "Mom knew that I was not paying her

$400,000, she did not want any money from me. She wanted me to have the house as a gift."

Harold J. Meloche averred that he had known the decedent since 1980 and had been present in the decedent's home on multiple occasions. Meloche asserted that he was physically present at the time the deeds were executed on February 6, 2000, and that he personally observed the decedent sign her name on both deeds. Meloche further asserted that he had been present on several previous occasions when the decedent had discussed her desire to give the property to respondent. Meloche averred that "[o]n February 6, 2000, [the decedent] was happy, engaged in conversation, knew me and conversed easily with me," and that the decedent "looked the deeds over carefully before signing." Meloche believed that the decedent "knew exactly what she was doing when she signed the deeds, she was taking the property out of her trust and giving it to [respondent]." Meloche averred that the decedent "signed the deeds voluntarily and of her own free will, [respondent] did not put any pressure on her at all," and confirmed that he had never seen respondent "force his mother to do anything." Meloche stated that he had "every reason to believe that [the decedent] understood the transaction."

Similarly, Susan Joyce Everhart[4] averred that she had known the decedent "for well over 20 years," that she was present at the time the deeds were executed on February 6, 2000, that she personally observed the decedent sign both deeds, and that she had "notarized both deeds" in her capacity as a notary public. Everhart averred that "[t]here [wa]s no question" in her mind

---

[4] Although respondent described Everhart in his deposition only as a "friend," petitioner contends that Everhart was actually respondent's girlfriend.

that the decedent "wanted to transfer the [property] to [respondent]." Everhart asserted that the decedent had told her of her desire to transfer the property to respondent not only on February 6, 2000, but also "at other times prior to February 6, 2000." According to Everhart, the decedent was lucid and coherent on February 6, 2000, and "read the deeds before she signed them." Everhart opined that the decedent "knew exactly what she was doing when she signed the deeds," and averred that "no one put any pressure on [the decedent] to sign [the deeds]." According to Everhart, respondent "made it clear that [the decedent] did not have to do this unless she wanted to, and she was clear that this is what she wanted . . . ."

Accountant James Reinert, who had previously done work for both respondent and the decedent, testified at his deposition that he had become aware sometime before 2002 that respondent owed $400,000 to the decedent. Reinert subsequently prepared a gift tax return on behalf of the decedent indicating that she had forgiven this $400,000 debt as a gift to respondent. Reinert admitted that respondent himself—and not the decedent—had provided all the information necessary to prepare the gift tax return. However, Reinert testified that he had no reason to believe that the information provided by respondent was not accurate or truthful. Although Reinert was deposed in May 2007, it is not clear whether the probate court considered his deposition testimony when ruling on the motion for summary disposition.

Respondent has presented the gift tax return, dated July 23, 2002, to this Court on appeal. However, it does not appear that the gift tax return was submitted to the probate court. The gift tax return states that the decedent gave respondent a gift of $400,000 on Febru-

ary 6, 2000, and describes the purpose of the gift as "Forgiveness of Personal Debt." As correctly noted by petitioner, the gift tax return is unsigned and it is unclear whether it was ever filed with the Internal Revenue Service.

On August 1, 2008, without holding oral argument, the probate court issued an opinion and order concerning petitioner's motion for summary disposition of count II of the complaint. The probate court's opinion and order stated in relevant part:

> The [petitioner] submitted to the [respondent] Requests for Admission. The [petitioner] requested that the [respondent] admit that he never paid the Decedent or any Trustee of the Decedent's Trust $400,000.00 in exchange for all of [the] rights, title and interest in the real property in question. The [respondent] admitted that even though the deed states that the real property was conveyed in consideration for $400,000.00, the [respondent] never in fact paid the Decedent nor paid any of her Trustees of her Trust $400,000.00 for the real property in question, instead the [respondent] stated that the transfer of the property was a gift.
>
> The Court in *Sharrar v Wayne Savings Ass'n*, 246 Mich 225 (1929), ruled that "substantial failure of consideration justifies re[s]cission." The [petitioner] argues, pursuant to *Sharrar* that given the [respondent]'s admitted failure to pay the consideration amount of $400,000.00, the transfer of the real property to the [respondent] should be rescinded. The [respondent] argues that the amount of consideration is immaterial, but is adequate in this case.
>
> The [petitioner] argues that the Court in *Osius v Dingell*, 375 Mich 605 (1965) set out the criteria for a valid gift. The Court stated: "[T]he three elements necessary to constitute a valid gift are these: (1) that the donor must possess the intent to pass gratuitiously [sic] title to the donee; (2) that actual or constructive delivery be made; and (3) that the donee accept the gift." The [petitioner] argues that there can be no gift present in the case at hand when

the deed that was recorded states that it is in consideration of $400,000.00. The [respondent] argues that a valid gift is present . . . . The [respondent] has not presented any evidence to support this claim (i.e., a written notice of the gift or a gift tax return that was filed).

Because the [respondent] has nothing in writing supporting his claim for a gift, the gift could only be considered oral. Because of such, the [petitioner] next argues that the transfer of the residence to the [respondent] violates the Statute of Frauds. Pursuant to *Brooks v Gillow*, 352 Mich 189 (1958), "under . . . Michigan's Statute of Frauds, MCL 566.106, an interest in real estate cannot be [the] subject of an oral gift."

The [respondent] continuously argues that the Decedent was competent when the deeds were signed and has presented affidavits supporting this claim. Even if the Decedent was competent when the deeds and or alleged gift was given, the [respondent] still has not presented any evidence to refute the facts that pursuant to *Sharrar* no consideration was given in exchange for the residence, pursuant to *Osisus* [sic], there is no evidence of a gift present, and pursuant to *Brooks*, there is no writing as required in the Statute of Frauds.

The probate court accordingly granted petitioner's motion for summary disposition with respect to count II of the complaint, ordering that the property "be reconveyed back to the Jane E. Rudell Trust . . . ."

## II. STANDARDS OF REVIEW

We review de novo the grant or denial of a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). We also review de novo the ultimate disposition reached in a quiet-title action, which is equitable in nature. *Canjar v Cole*, 283 Mich App 723, 727; 770 NW2d 449 (2009). A deed is a contract, *Negaunee Iron Co v Iron Cliffs Co*, 134 Mich 264, 279; 96 NW 468 (1903), and the proper

interpretation of the language in a deed is therefore reviewed de novo on appeal, *In re Egbert R Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). All other questions of law, including issues of statutory interpretation, are reviewed de novo as well. *Cowles v Bank West*, 476 Mich 1, 13; 719 NW2d 94 (2006); *Griffith v State Farm Mut Automobile Ins Co*, 472 Mich 521, 525-526; 697 NW2d 895 (2005).

### III. ANALYSIS

Respondent argues on appeal that the probate court erred by granting petitioner's motion for summary disposition of count II of the complaint. We agree.

### A. FAILURE OF CONSIDERATION

Relying on *Sharrar v Wayne Savings Ass'n*, 246 Mich 225; 224 NW 379 (1929), the probate court ruled that because respondent had never paid the decedent the amount of $400,000, as recited in the second deed, the second deed was subject to rescission for failure of consideration. It is undisputed that respondent did not pay the decedent the recited consideration of $400,000. In general, a complete or substantial failure of consideration may justify the rescission of a written instrument. *Id*. at 229; see also *Moran v Beson*, 225 Mich 144, 146; 195 NW 688 (1923), and *Adell Broadcasting Corp v Apex Media Sales, Inc*, 269 Mich App 6, 13-14; 708 NW2d 778 (2005). However, this general rule is not strictly applicable in the context of property transfers between a parent and a child. At least when there are no outstanding claims against the property by creditors of the estate, "a deed from [a parent] to [a child], which expresses a valuable consideration, is valid, though no actual consideration passed . . . ." *Hoskey v Hoskey*, 7 Mich App 122, 126; 151 NW2d 227 (1967); see also

*Warren v Tobey*, 32 Mich 45 (1875). In the instant case, the parties have presented no evidence of any outstanding claims against the property by creditors of the decedent's estate. Therefore, in light of the foregoing authority, we must conclude that respondent's failure to pay the recited consideration of $400,000 was not alone sufficient to justify the cancellation or rescission of the second deed. *Hoskey*, 7 Mich App at 126-127; see also 19A Michigan Civ Jur, Parent & Child, § 92, p 179.

### B. DONATIVE INTENT

Citing *Osius v Dingell*, 375 Mich 605; 134 NW2d 657 (1965), the probate court also ruled that there was no evidence of donative intent on the part of the decedent in this case. "It may be stated generally that the three elements necessary to constitute a valid gift are these: (1) that the donor must possess the intent to pass gratuitously title to the donee; (2) that actual or constructive delivery be made; and (3) that the donee accept the gift." *Id.* at 611; see also *Davidson v Bugbee*, 227 Mich App 264, 268; 575 NW2d 574 (1997). Whether a party has acted with donative intent presents a question of fact. *Osius*, 375 Mich at 611. When there is no evidence of donative intent, courts will find that no gift has been made. See *id.* at 611-612.

It appears that the probate court found an absence of donative intent for *two different* reasons. First, the probate court observed that respondent had "not presented any evidence" to support his claim that the property was conveyed as a gift. Specifically, the court pointed out that respondent had not submitted "a written notice of the gift or a gift tax return that was filed." We fully acknowledge that respondent had not submitted a signed gift tax return at the time of the probate court's ruling on the motion for summary

disposition. When reviewing a decision on a motion for summary disposition, this Court will not consider evidence that had not been submitted to the lower court at the time the motion was decided. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 313 n 4; 660 NW2d 351 (2003). "This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). Accordingly, we must decline to consider any evidence presented by respondent that was not available to the probate court at the time of its ruling. At any rate, however, we note that even if the gift tax return had been presented to the probate court, it is unsigned and it is not clear whether it was ever filed with the Internal Revenue Service. Accordingly, the return would have been of little value to the court in rendering its decision.

But contrary to the probate court's ruling, the absence of a signed gift tax return was not conclusive evidence that the property was not given to respondent as a gift. It is well settled that although the filing of a gift tax return may tend to show that a gift has been made, the absence of such a return is not conclusive evidence that a conveyance was a sale rather than a gift. See, e.g., *Layman v Layman*, 292 Ark 539, 541; 731 SW2d 771 (1987); *In re Marriage of Agazim*, 147 Ill App 3d 646, 651; 498 NE2d 742 (1986). Similarly, the presence of a filed gift tax return is not conclusive evidence that a gift was made. See, e.g., *Chase v Blackstone Distributing Co*, 110 RI 537, 547; 294 A2d 392 (1972); *Whiteley v United States*, 214 F Supp 489, 495 (WD Wash, 1963). Nor would it ordinarily be conclusive that there was no other written document indicating the decedent's intent to gratuitously pass title to respondent. "[T]he donor's intention to make a gift need not be expressed in any particular form," 38 Am Jur 2d,

Gifts, § 19, p 718, and donative intent may typically be proven through oral testimony, see *In re Morse's Estate*, 170 Mich 114, 121-122; 135 NW 1057 (1912); *In re Zaharion Estate*, 95 Mich App 70, 71; 290 NW2d 84 (1980), vacated on other grounds 412 Mich 852 (1981). Quite simply, the probate court erred as a matter of law by ruling that respondent was required to present written confirmation of the gift.

Second, the probate court concluded that because the deed recited a valuable consideration of $400,000, the conveyance of the property was a sale rather than a gift. It is true that the payment of valuable consideration is "the chief distinction between a sale and a gift," 38 Am Jur 2d, Gifts, § 2, p 703, and that the recitation of valuable consideration in a deed provides at least some "evidence that a sale was intended," *Scott v Scott*, 86 Ark App 120, 128; 161 SW3d 307 (2004). But the rule in Michigan is that a recital of valuable consideration in a deed is not conclusive proof that the property was actually sold for value. *Gardner v Gardner*, 106 Mich 18, 21; 63 NW 988 (1895); see also *Shotwell v Harrison*, 22 Mich 410, 420 (1871), and *Osten-Sacken v Steiner*, 356 Mich 468, 475; 97 NW2d 37 (1959). Indeed, Justice CHRISTIANCY explained that under certain circumstances, the recital of consideration in a deed is "mere hearsay," *Shotwell*, 22 Mich at 420, and our Supreme Court has observed that a deed's recital of consideration is only prima facie evidence "of the slightest kind," *Mowrey v Vandling*, 9 Mich 39, 41 (1860). Stated another way, "[t]he consideration recited in a deed is not conclusive, but can afterwards be inquired into." *Gardner*, 106 Mich at 21. On the basis of this authority, we hold that the second deed's recital of valuable consideration in the amount of $400,000 was not conclusive proof that the decedent intended to sell the property to respondent for value. The recital of consid-

eration in the amount of $400,000 was no more than prima facie evidence of a sale, and could "afterwards be inquired into" for the purpose of establishing that the conveyance was actually made as a gift. *Id.*

We conclude that there remained a genuine issue of material fact with respect to whether the decedent intended to give the property to respondent as a gift. Petitioner was not entitled to judgment as a matter of law on this issue. The second deed's recital of valuable consideration in the amount of $400,000 was merely prima facie evidence. *Mowrey,* 9 Mich at 41. Accordingly, respondent was entitled to introduce other competent evidence tending to rebut it, including evidence that the decedent intended to give him the property as a gift. See *Gardner,* 106 Mich at 21.

### C. STATUTE OF FRAUDS

The probate court also ruled that the statute of frauds barred respondent from proving that the decedent acted with the requisite donative intent in this case. Michigan's general real-estate statute of frauds, MCL 566.106, provides:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, *or by a deed or conveyance in writing,* subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing. [Emphasis added.]

The statute of frauds "was designed to prevent disputes as to what the oral contract, sought to be enforced, was." *Bagaeff v Prokopik,* 212 Mich 265, 269; 180 NW 427 (1920); see also *Kelsey v McDonald,* 76 Mich 188, 191-192; 42 NW 1103 (1889).

Contrary to the ruling of the probate court, the holding of *Brooks v Gillow*, 352 Mich 189; 89 NW2d 457 (1958), is not strictly applicable in the case at bar. In *Brooks*, our Supreme Court held that the statute of frauds prohibits an oral gift of an interest in real estate, and that a writing is therefore required to make such a gift. *Id.* at 198. However, there *was* a writing in the instant case. It is axiomatic that a "deed" is a sufficient writing to satisfy the statute of frauds. MCL 566.106; see also *Kitchen v Kitchen*, 465 Mich 654, 658; 641 NW2d 245 (2002).

It has been said that to satisfy the statute of frauds, the writing or memorandum "must be certain and definite" with respect to all essential terms of the transaction. *Cooper v Pierson*, 212 Mich 657, 660; 180 NW 351 (1920).[5] But the validity of this statement is doubtful, because the statute of frauds contains very few true requirements. *Goslin v Goslin*, 369 Mich 372, 376; 120 NW2d 242 (1963); *Zurcher v Herveat*, 238 Mich App 267, 278-279; 605 NW2d 329 (1999). At any rate, our Supreme Court has specifically observed that once a deed has been reduced to writing and the conveyance has been made, the statute of frauds does not foreclose a subsequent inquiry into the consideration recited in the original deed. *Gardner*, 106 Mich at 21. Consequently, we conclude that any attempt by respondent to

---

[5] Indeed, it has been said that the statute of frauds requires an instrument conveying an interest in land to be certain and definite with regard to all essential terms of the transaction, *including consideration*. See, e.g., *Cooper*, 212 Mich at 660; *McFadden v Imus*, 192 Mich App 629, 633; 481 NW2d 812 (1992); *Marina Bay Condos, Inc v Schlegel*, 167 Mich App 602, 606; 423 NW2d 284 (1988). But this is clearly incorrect. In Michigan, a deed or written conveyance of land need not recite any price or consideration to comply with the statute of frauds. MCL 566.109; *Benedek v Mechanical Products, Inc*, 314 Mich 494, 511-512; 22 NW2d 901 (1946); *In re Skotzke Estate*, 216 Mich App 247, 250; 548 NW2d 695 (1996).

rebut or contradict the second deed's recital of valuable consideration by way of oral evidence would not violate the statute of frauds. *Id.*

### D. PAROL EVIDENCE AND SECRET INTENT

A closely related but legally distinct question in this case is whether extrinsic or parol evidence was admissible to prove that the decedent did not actually intend to sell the property for value, despite the otherwise plain and unambiguous language of the deed reciting a valuable consideration of $400,000. We conclude that parol evidence was admissible for this purpose.

It is certainly true that the plain language of a deed is the best evidence of the parties' intent. See *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc,* 472 Mich 359, 370-371; 699 NW2d 272 (2005); *Wild v Wild,* 266 Mich 570, 576-577; 254 NW 208 (1934). Respondent argues that the decedent never actually intended to charge him $400,000 for the property, but only included the recital of consideration in the deed for unspecified "tax purposes." In other words, respondent essentially argues that although the recital of a valuable consideration was included in the plain language of the deed, that recital was not reflective of the parties' secret intent that the property would be conveyed as a gift. "As with any instrument, a deed must be read as a whole in order to ascertain the grantor's intent." *Huntington Woods v Detroit,* 279 Mich App 603, 621; 761 NW2d 127 (2008). The general rule is that "[t]he controlling intent is that which is expressed in the instrument, rather than any belief or secret intention of the party or parties which may have existed at the time of execution." 23 Am Jur 2d, Deeds, § 212, p 215. As this Court has recognized, "[i]ntentions are manifested by words and actions, and not a secret intent." *First Pub Corp v*

*Parfet*, 246 Mich App 182, 189; 631 NW2d 785 (2001), vacated in part and affirmed on other grounds 468 Mich 101 (2003).

In light of this authority, it might appear at first blush that respondent should not be permitted to introduce extrinsic or parol evidence to prove that the decedent conveyed the property with donative intent. Such extrinsic evidence would certainly tend to contradict the plain language of the deed, which unambiguously stated that the property was being sold for value. The general rule is that when a quitclaim deed is reduced to writing and executed with the proper formalities, "[i]t is presumed to contain the agreement made by the parties at the time" and "is so conclusively presumed to embody the whole contract that parol evidence is inadmissible to contradict it or add to its terms." *Wild*, 266 Mich at 576-577; see also *Tepsich v Howe Constr Co*, 373 Mich 404, 407; 129 NW2d 398 (1964).

However, it has long been established that this general rule does not apply to the recital of consideration in a deed. As explained earlier, the rule in Michigan is that a deed's recital of valuable consideration is not conclusive regarding whether the property was actually sold for value. *Gardner*, 106 Mich at 21; see also *Shotwell*, 22 Mich at 420. "The consideration recited in a deed is not conclusive, but can afterwards be inquired into." *Gardner*, 106 Mich at 21; see also *Cutler v Spens*, 191 Mich 603, 618; 158 NW 224 (1916). And with respect to the issue of parol evidence, our Supreme Court has specifically held that "[w]hile the consideration expressed in a written instrument is *prima facie* to be taken as the actual consideration, the rule is well settled by abundant authority that parol evidence is admissible to show that the true consideration was . . . different from that expressed." *Stotts v Stotts*, 198 Mich 605, 617; 165 NW 761 (1917).

In essence, respondent wished to present parol evidence to prove that although the deed recited a valuable consideration of $400,000, the conveyance was actually made without consideration, or alternatively, in consideration of the love and affection existing between him and his mother.[6] In accordance with the rule of *Stotts*, we conclude that respondent should not have been precluded from doing so. On remand, assuming that it is otherwise admissible, respondent shall be entitled to introduce parol evidence "to show that the true consideration was . . . different from that expressed" in the second deed. *Id.*

#### IV. CONCLUSION

We conclude that the probate court erred by granting petitioner's motion for summary disposition with respect to count II of the complaint. Petitioner was not entitled to judgment as a matter of law on this issue. We accordingly reverse and remand for further proceedings. A question of fact remained concerning whether the decedent possessed the requisite donative intent to make a gift at the time the second quitclaim deed was executed. The probate court will be required to hear the testimony and weigh the evidence in order to determine whether the decedent actually intended to give the property to respondent as a gift. See *Osius*, 375 Mich at 611-612.

We note that the probate court did not reach petitioner's arguments concerning respondent's alleged fraud, overreaching, undue influence, and coercion. We express no opinion with respect to these matters, and decline to consider them further because they were not

---

[6] A conveyance of real property "for and in consideration of love and affection" is considered a gift. See *Ridinger v Ryskamp*, 369 Mich 15, 16; 118 NW2d 689 (1962).

decided below. See *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005); *People v Hall*, 158 Mich App 194, 199; 404 NW2d 219 (1987). The probate court will be required to consider these issues on remand and to take further evidence as necessary.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, respondent may tax costs pursuant to MCR 7.219.