*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NATHANIEL MOORE,

        Plaintiff/Counterdefendant-Appellant,

v

HARRY WILBUR,

        Defendant/Counterplaintiff-Appellee.

UNPUBLISHED
January 26, 2023

No. 358982
Kent Circuit Court
LC No. 20-007648-CH

Before: RIORDAN, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

In this action to quiet title to property located at 314 Robey Place SE, in Grand Rapids, plaintiff, Nathan Moore, appeals the trial court's order granting summary disposition in favor of defendant, Harry Wilbur, under MCR 2.116(C)(7) (claim barred by operation of law) and (C)(10) (no genuine issue of material fact). The trial court also ordered plaintiff to pay defendant $6,250 in back rent. For the reasons stated herein, we reverse the trial court's order and remand the matter to the trial court to determine whether plaintiff can establish the existence of an oral contract for the sale of the disputed property and, if so, whether plaintiff partially performed the contract so as to remove the contract from the statute of frauds.

## I. RELEVANT FACTS AND PROCEEDINGS

According to plaintiff, he first rented the house from defendant in 2007. By 2012, plaintiff was tired of renting and told defendant that he wanted to buy a house. Defendant said that he was willing to sell plaintiff another property, gave plaintiff a tour of the property, and told plaintiff that he would sell it to him for its appraised value. Plaintiff agreed to pay the appraised value for the house, to make a $2,000 down payment, and to make monthly payments of $500. On or about November 1, 2012, plaintiff paid defendant $2,000 down, and defendant said that he would take care of the paperwork. The house was appraised in November 2012 at $35,000. Ava Marti, plaintiff's long-time friend, witnessed defendant agree to sell the house to plaintiff for $35,000, and she saw plaintiff hand defendant a $2,000 down payment. Mari Beth Johnson Jelks, the mother of a woman who lived next door to plaintiff, recalled thanking defendant for selling the house to plaintiff, and attested that defendant said that he and plaintiff had been friends for a long time, that

plaintiff helped defendant with maintenance on his houses and "kept an eye out on [defendant's] other houses," and that defendant did not just give the house to plaintiff, "but sold it at market price."

Defendant offered a different version of events. He testified that plaintiff asked to move from the originally rented property to the subject property, presumably because the latter had a "[n]icer yard." Defendant agreed to let him move, and the two executed a "standard rental agreement" for the house. As to the appraisal that plaintiff claimed was used to set the house's purchase price, defendant testified that he had an appraisal done because he occasionally liked to get an idea of what his property was worth. Defendant denied offering to sell plaintiff one of the houses that he owned.

In 2013, the City of Grand Rapids notified plaintiff that the house would be inspected to ensure that it complied with the code for rentals. When he told defendant about the inspection appointment, defendant said that the house should not be inspected because it was no longer a rental, but had been sold to plaintiff. The parties then executed an October 15, 2013 note, in which defendant stated that he sold the house to plaintiff on November 1, 2012. The note was signed by both parties and notarized.

Asked whether the statement in the October 15, 2013 note indicating that he had sold the house to plaintiff was true, defendant said: "It was a process of selling it. It never got finished. We had every intention of going through." Asked why he said that he sold the house to plaintiff if he had not done so in fact, defendant indicated that the purpose of the note was to avoid having to comply with the City's requirement that single-family rental units undergo certification. However, in an earlier-filed affidavit, defendant said that the purpose of the note was to avoid the $210 inspection fee. Defendant did not remember why he picked November 1 as the date to put in the note, but he denied picking it because it was the date that he sold the house to plaintiff, insisting that there was no sale.

Plaintiff began making improvements to the property in spring 2014, renovating the kitchen, bathroom, and upgrading the utilities. In 2019, plaintiff installed a new fence around the property. Plaintiff contended that, in several conversations with defendant between 2018 and 2020, defendant indicated that plaintiff had nearly paid the full purchase price of the house. In 2020, plaintiff asked defendant to provide him "the final balance from his accountant in writing" so that plaintiff could wrap up everything. Although defendant agreed to get the information plaintiff requested, and despite plaintiff's repeating his request twice more in subsequent months, defendant never provided him the requested information. In August 2020, defendant told plaintiff that he did not remember signing a contract for the house and that he did not have the financial information that plaintiff requested. In September 2020, plaintiff's attorney sent defendant a letter in which he enclosed a document showing that plaintiff had paid the full purchase price of the house, the memorandum of sale, and a draft warranty deed for defendant's signature.

When defendant did not provide the requested deed, plaintiff filed the underlying lawsuit asking the trial court to quiet title to the property to him and to order defendant to refund the $8,406 that plaintiff paid in excess of the agreed-upon price. Defendant denied the allegations in plaintiff's complaint and counterclaimed, alleging, in essence, that he rented the property to plaintiff for $500 a month, that the rental agreement governed the present dispute, and that

plaintiff's claims were barred by the statute of frauds and res judicata. Regarding the latter, defendant alleged that when plaintiff stopped making monthly payments under the rental agreement in December 2016, defendant filed a Demand for Possession of Nonpayment of Rent on January 3, 2017. The parties appeared in district court three weeks later, and the court entered a consent judgment ordering plaintiff to pay defendant $1,085.82 for back rent and costs by February 3, 2017, or risk eviction. Defendant contended that the consent judgment had res judicata effect on the question whether plaintiff was a renter or a buyer; he was the former. Defendant further alleged that plaintiff had not paid him rent or late fees under the rental agreement since September 1, 2020, and asked the trial court to order plaintiff to pay back rent and late fees, as well as costs and attorney fees.

Defendant moved for summary disposition, contending that: (1) he did not sell the property to plaintiff and that the parties' relationship was governed by an unambiguous rental agreement that did not provide for an option to buy or oral agreements; (2) the October 15, 2013 note was not a valid land contract because it lacked essential information; and (3) the consent judgment following the 2017 summary proceedings for possession of the house had res judicata effect on plaintiff's quiet-title claim. Plaintiff responded that the parties' rental agreement was superseded by their later oral agreement for the sale of the property, that the doctrine of partial performance removed the parties' oral agreement from the statute of frauds, and that res judicata did not bar his claim because the 2017 summary proceeding was a sham proceeding. Regarding the latter, plaintiff attested in his affidavit that he was arrested and charged with assault on December 28, 2016, and that defendant paid $1,000 to bail plaintiff out of jail. One of the conditions of plaintiff's release was that he could not have direct contact with the victims of the assault, who were living at the house. Consequently, plaintiff stayed at defendant's home. Plaintiff alleged that defendant initiated the eviction proceeding to get the victims out of the house and to recover the $1,000 that defendant paid to bail plaintiff out of jail.

The trial court issued a written opinion and order granting defendant summary disposition of plaintiff's claim under MCR 2.116(C)(7) and (C)(10), resting its summary disposition decision on three grounds. First, the trial court observed that, viewed in the light most favorable to plaintiff, the October 15, 2013 note's characterization of the house as "sold" referred to another agreement "that was at most an oral contract." The trial court concluded, however, that "[o]ral contacts are not enforceable for land sales." Second, the trial court reasoned that "[a] post-agreement appraisal is not a valid basis to set the payment terms when one is alleging an entirely oral agreement for which there is no other evidence." The trial court observed that the purchase price for the property was never put in writing and stated that it would not fill in the blanks. Lastly, the trial court concluded that summary disposition under MCR 2.116(C)(7) was appropriate on the basis of the 2017 consent judgment, which unequivocally stated that plaintiff owed defendant *rent* and that defendant was entitled to evict plaintiff under the terms of the parties' *rental agreement*. Regardless of the circumstances leading to the consent judgment, the consent judgment remained valid and final, and plaintiff could not "sit on his hands and ignore [it]." The trial court issued a corresponding order granting defendant's motion for summary disposition and awarding him $6,250 in back rent. Plaintiff now appeals.

## II. DISCUSSION

Plaintiff contends that the trial court erred by granting summary disposition in favor of defendant. We agree.

We review de novo a trial court's decision whether to grant a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). The applicability of res judicata and whether the statute of frauds bars enforcement of an alleged contract are questions of law that we also review de novo. *Duncan v Mich*, 300 Mich App 176, 194; 832 NW2d 761 (2013); *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 457; 733 NW2d 766 (2006).

The trial court considered defendant's motion for summary disposition under MCR 2.116(C)(7) and (C)(10). MCR 2.116(C)(7) permits summary disposition when a claim is barred by a prior judgment. When reviewing a motion under subrule (C)(7), a trial court accepts all well-pleaded factual allegations as true and construes them in favor of the nonmovant unless other evidence contradicts them. See *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010). Documentary evidence submitted in support of the motion must be considered to determine whether there exists a genuine issue of material fact. *Id.* "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Id.* If a factual dispute exists and "factual development could provide a basis for recovery, dismissal is inappropriate." See *id.*

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). A trial court evaluating a motion for summary disposition under subrule (C)(10) "considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the nonmovant." *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999). Summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10).

The statute of frauds provides that, to be enforceable, certain types of agreements must be in writing and signed by the party against whom the agreement is to be enforced. Michigan's statute of frauds regarding the sale of land is found in MCL 566.106 and MCL 566.108. MCL 566.106 provides:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

Similarly, MCL 566.108 provides, in relevant part:

> Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some

note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing. . . .

In the present case, it is undisputed that there was no written agreement for defendant to sell the house to plaintiff. Plaintiff offers two reasons why the parties' oral agreement falls outside the statute of frauds. First, plaintiff refers to the October 15, 2013 note as a "memorandum of sale" and suggests that it is sufficient to remove the parties' oral agreement from the statute of frauds. It is not.

In the absence of a written contract for a sale of land, to satisfy the statute of frauds, "[l]etters, telegrams, or other written communications by a party to a contract to one who is not a party thereto, which sufficiently disclose the terms of the agreement and admit it or affirm it are . . . valid memoranda [of the agreement] within the requirements of the statute of frauds." *Benedek v Mech Prod*, 314 Mich 494, 502-503; 22 NW2d 901 (1946) (quotation marks and citation omitted); see also *In re Rudell Estate*, 286 Mich App 391, 408; 780 NW2d 884 (2009) (stating that "to satisfy the statute of frauds, the writing or memorandum must be certain and definite with respect to all essential terms of the transaction"). The writing at issue in *Benedek*, 314 Mich 511, was deficient because it did not express the essential elements and terms of the alleged oral contract. The same is true of the October 15, 2013 note. Viewed in the light most favorable to plaintiff, the note appears to affirm that a sale has occurred. However, it does not express any terms of the transaction. Therefore, plaintiff's argument that the October 15, 2013 note takes the parties' alleged oral agreement out of the statute of frauds must fail.

Next, plaintiff asserts that by paying the agreed-upon purchase price, taking possession of the property, and making valuable improvements to the property, he performed his obligation under the parties' oral agreement, thereby removing the oral contract from the statute of frauds. "The doctrine of partial performance applies primarily in actions involving land," *Barclae v Zarb*, 300 Mich App 455, 475 n 3; 834 NW2d 100 (2013), and provides as follows:

> "If one party to an oral contract, in reliance upon the contract, has performed his obligation thereunder so that it would be a fraud upon him to allow the other party to repudiate the contract, by interposing the statute, equity will regard the contract as removed from the operation of the statute." [*Dumas v Auto Club Ass'n*, 437 Mich 521, 540; 473 NW2d 652 (1991), quoting *Guzorek v Williams*, 300 Mich 633, 638-639; 2 NW2d 796 (1942).]

Under the doctrine of partial performance, a party's performance may be sufficient to remove an agreement from the statute of frauds. See *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 365; 320 NW2d 836 (1982) (stating that "[t]he doctrine of 'part performance' satisfying the statute is as old as the statute itself"). However, before the doctrine of partial performance may operate to remove an oral agreement from the statute of frauds, the existence of an oral contract must be established. See *Empire Shoe Serv, Inc v Gershenson*, 62 Mich App 221, 225; 233 NW2d 237 (1975).

Considering the foregoing, the trial court erred by granting summary disposition in favor of defendant on the basis that an oral contract for land is unenforceable as a matter of law. As the

foregoing illustrates, an oral contract may be enforceable if, in reliance on the contract, the party performed his or her obligation under the contract "so that it would be a fraud to allow the other party to repudiate the contract" by invoking the statute of frauds. *Dumas*, 437 Mich at 540. The parties disputed the existence of an oral contract for the sale of the house, and plaintiff presented evidence in an attempt to establish that such a contract existed. The trial court clearly erred by ruling that oral contracts for the sale of land are unenforceable as a matter of law, when, in fact, they might be enforceable under the doctrine of partial performance, and by failing to consider whether an oral agreement actually existed and whether plaintiff's performance was sufficient remove the oral agreement from the statute of frauds.

The trial court's second reason for granting summary disposition in favor of defendant implies that there is no oral agreement as a matter of law because the October 15, 2013 note did not include the payment terms and "[a] post-agreement appraisal is not a valid basis to set the payment terms when one is alleging an entirely oral agreement for which there is no other evidence." Neither the trial court nor defendant cite any authority, nor have we found any, in support of the proposition that a seller cannot agree to sell, and a buyer cannot agree to buy, property at its appraised value, even if the appraisal has not yet been done. Further, contrary to the trial court's statement that there is no evidence to support the existence of an oral contract, plaintiff presented evidence that included: (1) the October 15, 2013 note, in which defendant said that he sold the house to plaintiff on November 1, 2012; (2) an affidavit from Marti, in which she attested that she saw plaintiff give defendant a $2,000 down payment on the house; and (3) an affidavit from Jelks, in which she attested that defendant told her that he sold the house to plaintiff for market value and that plaintiff had made valuable improvements to the house. Plaintiff also submitted as evidence of an oral agreement defendants' deposition, in which defendant stated that he was in the process of selling the house to plaintiff and fully intended to go through with the sale, but the process was not completed. Plaintiff also submitted call sheets from the City of Grand Rapids indicating that defendant told inspectors that he sold the house to the house's occupant, plaintiff. The trial court erred by granting summary disposition on the basis that a postagreement appraisal is not a valid basis to set payment terms without considering whether plaintiff's evidence was sufficient to establish the existence of an oral contract.

Lastly, the trial court granted summary disposition in favor of defendant on the basis of the parties' 2017 consent judgment. Defendant contends that the trial court did not err because the consent judgment has a res judicata effect. See *Schwartz v Flint*, 187 Mich App 191, 194; 466 NW2d 357 (1991) (indicating that res judicata applies to consent judgments). For res judicata to apply to bar a subsequent action, "(1) the prior action must have been decided on its merits; (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involved the same parties or their privies." *JAM Corp v AARO Disposal, Inc*, 461 Mich 161, 166-167; 600 NW2d 617 (1999) (quotation marks omitted). "[T]he burden of proving the applicability of res judicata is on the party asserting it." *Baraga Co v State Tax Comm*, 466 Mich 264, 269; 645 NW2d 13 (2002).

Defendant argues that res judicata bars plaintiff's complaint because he could have argued in the 2017 summary proceedings that the rental agreement did not govern the parties' relationship and that he did not owe rent, but was purchasing the house. Further, defendant contends that because plaintiff admitted during the summary proceedings that he owed defendant "rent," the

question of whether the parties had a landlord-tenant relationship was decided in those proceedings.

However, under MCL 600.5750, "the Legislature took [summary proceedings] outside the realm of the normal rules concerning merger and bar in order that attorneys would not be obliged to fasten all other pending claims to the swiftly moving summary proceedings." *JAM Corp*, 461 Mich at 168-169.[1] Res judicata only applies with respect to "the issues actually litigated" in those proceedings. *Sewell v Clean Cut Mgmt, Inc*, 463 Mich 569, 576; 621 NW2d 222 (2001). Thus, to the extent that defendant argues that res judicata applies because plaintiff could have argued in the district court that he was purchasing the house, that argument is meritless since the parties never actually litigated the issue.

Further, while the question of whether the parties had a landlord-tenant relationship in 2017 could be res judicata if it was "actually litigated" in the summary proceedings, that fact does not logically preclude the parties from having some type of in-process agreement for a sale of the house. In other words, it is possible for a tenant to agree to purchase a house from a landlord while still remaining a "tenant" for the purposes of the law. Thus, even assuming that the parties conclusively had a landlord-tenant relationship in 2017, that would not necessarily negate an agreement between the parties for an eventual sale of the house. As a result, res judicata does not bar plaintiff's claim for quiet title.

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's order granting summary disposition and a money judgment in favor of defendant, and remand this matter so the trial court may determine whether plaintiff can establish the existence of an oral contract for the sale of the disputed property and, if so, whether plaintiff partially performed the contract so as to remove the contract from the statute of frauds.

Reversed and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.[2]

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ James Robert Redford

---

[1] MCL 600.5750 provides, in relevant part, that "[a] judgment for possession under this chapter does not merge or bar any other claim for relief . . . ."

[2] We decline to remand this matter to a different trial judge because there is nothing in the record to suggest that the original trial judge lacked impartiality. See *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004).