*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. CLARK, Minor.

UNPUBLISHED
October 15, 2025
10:27 AM

No. 374025
Ingham Circuit Court
Family Division
LC No. 24-000236-NA

Before: WALLACE, P.J., and RIORDAN and REDFORD, JJ.

REDFORD, J. (*dissenting*).

In this child protective proceeding, respondent-father appeals as of right the trial court's order terminating his parental rights to his biological child under MCL 712A.19b(3)(b)(*i*) (parent's act caused abuse or injury), (g) (failure to provide proper care and custody), (j) (reasonable likelihood of harm if returned to parent), and (k)(*iii*) (abuse included battering, torture, or other severe physical abuse and reasonable likelihood of harm if returned to parent). The majority has concluded that the trial court clearly erred by finding that reasonable efforts to reunify the family were excused by aggravated circumstances and vacated the trial court's order terminating respondent's parental rights.

For the reasons indicated below, I would conclude that reasonable efforts to reunify the family were not required and the trial court did not err when it terminated respondent's parental rights to his child. Therefore, I respectfully dissent.

## I. BASIC FACTS

I generally concur with the majority's description of the basic facts and procedural history of this case. As noted by the majority, the child had a mark on his cheek when he was two weeks old, a mark on his arm when he was six weeks old, and a bite mark on his nipple when he was eight weeks old. The child's non-respondent mother reported that respondent would care for the child alone on Friday nights so that she could sleep. On one of these occasions when respondent was giving the child a bath, the mother heard the child screaming and found respondent forcefully squeezing the child's head under his arm, leaving the child's naked body to dangle unsupported by his head and neck. During an interview with law enforcement and Children's Protective

-1-

Services ("CPS"), respondent admitted to biting the child's cheek and lip, biting his nipple, squeezing his forearm, and regularly squeezing the child out of anger or frustration to quiet him. After the child's medical evaluation, doctors confirmed that the child had a broken rib and diagnosed that the broken rib was the result of child abuse. Nearly all of the abuse in this case occurred before the child was three months old.

## II. STANDARD OF REVIEW

We review for clear error a trial court's decision regarding reasonable efforts. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). We also review for clear error a trial court's finding that a statutory ground for termination of parental rights has been proven and the trial court's finding that termination was in the child's best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A finding is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks and citation omitted). Further, we give deference to "the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016) (quotation marks and citation omitted).

## III. REASONABLE EFFORTS

Respondent asserts that reasonable efforts to reunify the family were required because clear and convincing evidence did not support that he broke the child's rib and the remaining conduct for which he pleaded no contest did not constitute aggravated circumstances. I disagree. The trial court correctly determined that reasonable efforts to reunify the child and respondent were not required pursuant to MCL 712A.19a(2)(a).

The Department of Health and Human Services ("DHHS") is obligated to make reasonable efforts to reunify the family in all cases except those involving an aggravated circumstance listed in MCL 712A.19a(2). *In re Simonetta*, 340 Mich App 700, 705-706; 987 NW2d 919 (2022). Absent aggravated circumstances, the reasonable efforts the DHHS must undertake include creating a service plan that outlines the steps that it and the parent must make to rectify the issues that led to the trial court taking jurisdiction and to achieve reunification. *Id*. at 707. Under MCL 712A.19a(2)(a), reasonable efforts are not necessary in cases in which "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in [MCL 722.638(1) and (2)]." Aggravated circumstances, as defined by MCL 722.638 include when a parent "has abused the child or a sibling of the child" by "[b]attering, torture, or other serious physical harm." MCL 722.638(1)(a)(*iii*). The trial court is required to articulate its "factual finding based on clear and convincing evidence that aggravated circumstances exist such that services are not required." *In re Simonetta*, 340 Mich App at 706 (quotation marks and citation omitted).

The trial court did not clearly err by finding that reasonable efforts to preserve or reunify the family were not necessary because of the presence of aggravated circumstances. The basis for the trial court's aggravated-circumstances decision was its determination that respondent subjected the child to multiple instances of battering and severe physical abuse by breaking the child's rib, squeezing him, and repeatedly biting and pinching him. Clear and convincing evidence supports these findings.

During an interview with law enforcement and CPS, respondent admitted to biting the child's cheek and lip, biting his nipple, squeezing his forearm, and regularly squeezing the child out of anger or frustration. Respondent later pleaded no contest to biting, pinching, and squeezing the child. The child's mother testified that she witnessed respondent squeezing the child's head out of anger, leaving his body to dangle unsupported below his head and neck. As indicated above, *all* of these actions by respondent took place before the child was three months old.

Although respondent admitted to biting, squeezing, and pinching the child, respondent denied causing the child's rib fracture. Respondent and petitioner offered competing experts regarding the cause of the child's broken rib. Dr. Guertin, who testified on behalf of petitioner, determined that the broken rib was caused by physical abuse perpetrated by respondent and rejected the likelihood of other causes of the injury, such as a birth injury. Dr. Smith, who testified on behalf of respondent, offered possible alternative theories of the cause of the rib fracture, but offered no conclusion on the cause. After listening to these competing experts and considering the experts' experience and testimony, the trial court concluded that Dr. Guertin's testimony was more credible than Dr. Smith.

The majority agrees that the child's broken rib would constitute "serious physical harm," under MCL 722.638, but concludes that the trial court clearly erred by concluding the broken rib was the product of physical abuse and respondent perpetrated that abuse. In concluding that clear and convincing evidence did not support the trial court's aggravated-circumstances findings, the majority has substituted its assessment of the credibility and weight of the evidence related to the cause and origin of this infant's broken rib for that of the trial court. Respectfully, this is legal error. As already indicated, we give deference to "the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App at 227 (quotation marks and citation omitted). The trial court heard competent evidence from an expert that the child's broken rib was caused by physical abuse. That expert expressed that alternative causes of the injury were unlikely and was subject to cross-examination on his theory of the cause of injury. Respondent has presented no reason to displace the deference this Court pays to the trial court's credibility determinations.

Additionally, the majority's conclusion that the only causal link between the rib fracture and respondent's conduct was Dr. Guertin's testimony ignores the totality of the circumstances. The record evidence supported that respondent and the mother were the only adults who cared for the child alone. Respondent would be left to care for the child outside the presence of the mother, and he would admittedly bite, pinch, and squeeze the child during that time when he became angry or frustrated. The child's mother saw the injuries on the child's body on several occasions and witnessed an instance in which respondent placed the child at risk of serious harm by forcefully squeezing his head and dangling his body unsupported while the child was a newborn infant. This evidence demonstrated that respondent repeatedly and aggressively abused the child out of frustration when he was left alone to care for the child. It further demonstrated that only respondent and the mother had access to the child to cause such an injury. This evidence, combined with Dr. Guertin's expert testimony, supported the causal link between respondent's conduct and the child's broken rib. Consequently, the trial court's conclusion that respondent caused the child's broken rib by physically abusing him was supported by clear and convincing evidence and satisfies the requirements of MCL 712A.19a(2)(a) and MCL 722.638.

Even if I were to accept the majority's conclusion that petitioner did not prove by clear and convincing evidence that respondent caused the child's broken rib by physically abusing him, clear and convincing evidence supported that respondent's remaining conduct for which he pleaded no contest constituted aggravated circumstances. The majority apparently concludes that respondent's admitted conduct of repeatedly biting, squeezing, and pinching the child does not constitute aggravated circumstances because the child's injuries from this conduct did not require medical treatment. This conclusion ignores that in addition to "serious physical harm" aggravated circumstances include when a parent has abused the child by "battering" and "torturing" the child. MCL 722.638(1)(a)(*iii*). The majority's conclusion that some physical injury requiring medical intervention must be established is not required by the statute.

As noted by the majority, the Legislature has defined "serious physical harm" in the same manner it is defined in MCL 750.136b. MCL 722.622(ee). Under MCL 750.136b, " 'serious physical harm' means any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut." However, the terms "battering" and "torture" were left undefined by the statute.[1] The pertinent dictionary definition of the term "batter" is "to beat with successive blows so as to bruise, shatter, or demolish," or "to subject to strong, overwhelming, or repeated attack." *Merriam Webster's Collegiate Dictionary* (11th ed). Additionally, the relevant dictionary definition of "torture" is "to cause intense suffering to : torment" or "to punish or coerce by inflicting excruciating pain." *Merriam Webster's Collegiate Dictionary* (11th ed). Neither of these statutory terms have an express requirement that the battering or torture cause physical injury requiring medical intervention. I would conclude that respondent tortured the child by forcefully squeezing the screaming infant's head under one's arm while dangling his body unsupported by the neck. As noted by the trial court, such conduct could easily kill an infant. I would likewise conclude that collectively, respondent's repeated conduct of biting, squeezing, and pinching the infant meets this definition.

In light of the evidence presented at the dispositional hearing, I am not left with a definite and firm conviction that the trial court erred by concluding aggravated circumstances were present. See MCL 712A.19a(2)(a). Therefore, I would conclude reasonable efforts toward reunification were not necessary.

## IV. STATUTORY GROUNDS

Because the majority concludes that aggravated circumstances were not present, it did not address the trial court's conclusion that several statutory grounds for termination were proven by

---

[1] "When a word or phrase is not defined by the statute in question, it is appropriate to consult dictionary definitions to determine the plain and ordinary meaning of the word or phrase." *In re Barber/Espinoza*, ___ Mich ___, ___ n 8; ___ NW3d ___ (2025) (Docket No. 167745); slip op at 10 n 8 (quotation marks and citation omitted).

clear and convincing evidence. I would conclude that the trial court did not err by finding that statutory grounds for termination existed by clear and convincing evidence.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). The trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*). Under MCL 712A.19b(3)(b)(*i*), the trial court may terminate a respondent's parental rights to a child if the court finds, by clear and convincing evidence, that the respondent caused the child or the child's sibling to suffer physical injury or physical abuse and there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

In the present case, respondent admitted to frequently squeezing the child, biting the child, and holding the child's head underneath his arm out of frustration and anger. Respondent also admitted to abusing the child over a period of time to stop him from crying. Within his first ten weeks of life, the child had a bruise that looked like a bite mark on his cheek, he had a bite mark on his nipple, and he had bruises on his arm. Even though the child's mother explained to respondent how to properly care for the child and hold him, respondent held the child's head in a dangerous manner that could have killed the child. While experts disagreed regarding the cause of the child's rib fracture, the record reflects that respondent likely caused the child's rib fracture and the trial court found the testimony of the petitioner's expert credible.

The record also reflects that there was a reasonable likelihood that the child would suffer from injury or abuse in the foreseeable future if he was placed in respondent's home. See MCL 712A.19b(3)(b)(*i*). The child's mother testified that she explained to respondent how to properly care for the child before he squeezed the child's head under his arm. After respondent held the child under his arm, the child's mother told respondent how to deescalate a situation and how to properly handle the child even when he was upset, which respondent stated he understood. Respondent later bit the child on the nipple area out of frustration before the child was removed from his care. While respondent's counsel reported at the dispositional hearing that respondent had been voluntarily participating in services and counseling, other than respondent's own testimony, there was no evidence presented to reflect this. Because there is nothing in the record to indicate that the child would be safe in respondent's care, there was a reasonable likelihood that returning the child to respondent's care would result in additional abuse or physical injury. See MCL 712A.19b(3)(b)(*i*).

In light of the evidence presented at the dispositional hearing, I am not left with a definite and firm conviction that the trial court clearly erred by terminating respondent's parental rights under MCL 712A.19b(3)(b)(*i*). Accordingly, the trial court did not err by finding that a statutory ground supported termination of respondent's parental rights to the child.[2]

---

[2] Termination of parental rights needs only to be supported by a single statutory ground. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Therefore, I see no need to address the

## V. BEST INTERESTS

The majority also did not address the trial court's determination that it was in the best interests of the child to terminate respondent's parental rights. I would affirm the trial court's best-interest finding.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App at 40. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "[T]he focus at the best-interest stage" is on the children, not the parent. *Id.* at 87. The trial court should weigh all the evidence available to it in determining the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court may consider factors including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42. This Court has also considered the length of time the child was placed in foster care or with relatives and whether it was likely "that the child could be returned to her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). This Court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. *In re White*, 303 Mich App at 713.

Addressing the best-interest factors, the trial court found that the child was safely placed with his mother, and, although a relative placement usually weighs against termination, it does not in this case because the mother did not act to protect herself and her child from an abusive partner. The trial court also considered the child's age, the child's bond with his mother, the child's lack of bond with respondent, and respondent's failure to make any serious attempts to reduce the barriers to reunification by engaging in services on his own.

Record evidence established that the child was closely bonded with his mother and had no bond with respondent. The child was in his mother's care throughout the proceedings and was approximately one year old at the time of termination. The child had a no-contact order against respondent and had not seen respondent since he was less than three months old. The DHHS supervisor for respondent's case testified that she did not believe there was a bond between the child and respondent and respondent provided no evidence that a bond existed between them.

Record evidence also supported that respondent lacked parenting ability and made no progress in alleviating the conditions that led to the child's abuse. While DHHS staff and the child's mother wanted respondent to engage in anger-management classes, parenting classes, and

---

trial court's additional findings under MCL 712A.19b(3)(g), (j), and (k)(*iii*). Regardless, having reviewed the record, I would conclude that the trial court did not clearly err by finding that clear and convincing evidence established termination was proper under the remaining statutory grounds.

other services, respondent did not provide DHHS with any evidence of progress toward alleviating or mitigating the conditions that led to the child's abuse. DHHS caseworkers did not believe respondent had the capacity and disposition to meet the child's physical needs, they did not believe respondent could give the child the love, affection, guidance, and education he needed, and they did not believe respondent had the permanency, finality, or stability in his own life to give the child permanency. DHHS staff also did not believe respondent had the sufficient mental and physical health to provide care to the child. There was also evidence of prior acts of domestic violence by respondent against the child's mother and respondent admitted to three separate acts of abuse against the child.

In arguing that termination was not in the child's best interests, respondent primarily argues that the trial court failed to consider his substantial progress in addressing his anger management and parenting skills. However, in making this argument, respondent improperly relies on information and documents that were not included in the trial court record. See MCR 7.210(A)(1); see *In re Rudell Estate*, 286 Mich App 391, 405; 780 NW2d 884 (2009). There is no evidence of substantial progress in the record. Respondent also argues the trial court failed to consider the child's placement with his mother and alternatives to termination. However, the trial court explicitly considered the child's relative placement with his mother and concluded that this fact did not weigh against termination under the circumstances of this case. Likewise, the trial court was not required to consider alternatives to termination in its best-interest determination. See *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000) (holding that upon statutory ground for termination being established by clear and convincing evidence, the parent's liberty interest no longer includes any right to custody and control of their child).

Contrary to respondent's assertion's, a preponderance of the evidence supported that termination was in the child's best interests. The record reflects that there was evidence of prior acts of domestic violence by respondent, and respondent admitted to abusing the child. The record further reflects he made no progress in alleviating the conditions that led to the child's abuse, he did not have the parenting skills to safely care for the child, he had a history of domestic violence against the child's mother, and he did not have a bond with the child. Accordingly, the trial court did not clearly err by finding that termination of respondent's parental rights served the child's best interests.

After review of the record, I would conclude that clear and convincing evidence supported the trial court's aggravated-circumstances and statutory-grounds findings and that a preponderance of the evidence supports the trial court's best-interest determination. Respondent raised several other issues on appeal. I have reviewed these issues and conclude that none of the other issues raised on appeal by respondent have merit.

Accordingly, I would affirm the trial court's termination of respondent's parental rights.


/s/ James Robert Redford