MILLARD *v.* MILLARD.

1. EVIDENCE—PAROL EVIDENCE—DEEDS.

Parol evidence is not admissible to vary or contradict the legal effect of a conveyance.

2. DEEDS—ESTATES—FEE SIMPLE—FEE TAIL.

By the common law a conveyance of lands and tenements to one and his heirs generally created an estate in fee simple, and a conveyance to one and the heirs of his body created an estate in fee tail; both being estates of inheritance, made so by use of the word "heirs."

3. SAME — LIFE ESTATES — "HEIRS" — "BODY" — FEE TAIL — FEE SIMPLE.

A deed recited to be between a father of the first part, and a daughter and her children, heirs of her body, of the second part, and granting unto the parties of the second part and to their heirs and assigns forever, certain lands, to have and to hold to the parties of the second part, their heirs and assigns forever, *held*, not to convey to the daughter a life estate, with remainder to her heirs, there being no indication of a life estate, but to attempt to create a fee tail, which, by operation of 3 Comp. Laws 1915, § 11521, is converted into a fee simple in the daughter, since the deed contained not only the word "heirs," essential to make it an estate of inheritance, but also the word "body," the appropriate word of procreation to make a fee tail, under which construction the word "children" adds nothing, being a word of limitation.

Error to Clinton; Moinet (Edward J.) J. Submitted October 8, 1920. (Docket No. 60.) Decided December 21, 1920.

Ejectment by Ernest Millard and others against Lester A. Millard. Judgment for plaintiffs on a directed verdict. Defendant brings error. Reversed.

*Hawley, Eldred & Gemuend,* for appellant.

*Searl & Searl,* for appellees.

On the general rule that parol evidence not admissible to vary, add to or alter a written contract, see note in 17 L. R. A. 270.

BIRD, J. This proceeding is one in ejectment involving certain lands in Clinton county. The case turned on the construction of a certain warranty deed through which both parties claimed title. The trial court took plaintiffs' view and directed a verdict in their behalf and the defendant assigns error. The controversy grows out of a warranty deed given by Moses Dean to his daughter, Charity Millard, in the year 1846. Moses Dean appears to have been, at that time, a resident of Ionia county and the possessor of considerable property. He had three daughters and one son, and on the 27th day of July, 1846, he conveyed to each of them 160 acres of land. His daughter Charity was married to John A. Millard at that time, and they had five children. After the conveyance five more were born. The 160 acres which passed to her was described as the east half of the southeast quarter and the east half of the northeast quarter of section 31 in Lebanon township, Clinton county. In February, 1877, Charity Millard and her husband conveyed the east half of the southeast quarter to their son, Lester A. Millard, the defendant herein. Later Lester purchased the south 13 acres of the east half of the northeast quarter. This made him the owner of 93 acres, the title to which is involved in this suit.

Charity Millard continued to live on the remaining 67 acres until a short time before her death, which occurred in December, 1918, when she had nearly reached the age of 104 years. After her death the plaintiffs, who are her grandchildren, claimed title to the 93 acres, which was then in possession of the defendant, their claim being that their grandmother Charity had only a life estate therein, and upon her death they were entitled to the possession of their respective shares therein as remaindermen. The validity of this claim furnishes the principal issue in the case. The question involves the construction of the

conveyance, referred to, from Moses Dean to Charity Millard in July, 1846. The material portions of the deed are:

"This indenture made the 27th day of July in the year of our Lord one thousand eight hundred and forty-six, between Moses Dean, of the county of Ionia and State of Michigan, of the first part, and Charity Millard and her children, heirs of her body, of the second part, witnesseth: * * * have granted * * * unto the said parties of the second part, and to their heirs and assigns forever, all that certain piece or parcel of land, etc. * * * To have and to hold, the above-mentioned and described premises, with the appurtenances, and every part and parcel thereof, to the said parties of the second part, their heirs and assigns forever."

It is the claim of the plaintiffs that in legal effect this was a deed conveying to Charity a life estate, with a vested remainder over in fee to her heirs *in esse*, subject, however, to be opened up to let in after born children, and that all of the children took a vested interest in the remainder, and that when Charity departed this life these children, or their descendants, were entitled to the possession of their respective shares.

The defendant took the position that an attempt was made by the deed to create an entailed estate, which, under the provisions of our statute, was converted into a fee simple estate in Charity. That if the language of the deed will not admit of this construction then it must be held that Charity Millard and her children *in esse* at the date of the conveyance took the lands as tenants in common.

1. The theory advanced by plaintiffs, and adopted by the trial court, that the deed conveyed but a life estate to Charity with a vested remainder over to her children *in esse*, subject, however, to be opened up to let in after-born children, is a theory not easily sustained by the language of the deed. The trial court

appears to have been of the opinion that the wording of the deed, aided by extrinsic circumstances, which were shown, justified its conclusion. An examination of the language of the deed discloses no reference to a life estate, and if we construe the word "children" as a word of *purchase* (as plaintiffs insist we should do), there is no language indicating that any other or different estate was intended for Charity than for the children. If the word "children" is construed as a word of *purchase* and not of *limitation,* it is a much more reasonable construction to say that it was the intent to make Charity and the children tenants in common. But even this theory has its difficulties. If it were intended to make them tenants in common, we are met at once with the inquiry why the words "of her body" were inserted? This is not easily answered.

It is extremely difficult to understand how an expert or a novice in making conveyances would have used the language contained in this deed if Moses Dean had requested him to draw a deed giving Charity a life estate with remainder over to her children. And it is just as difficult to understand how Moses Dean, a man of business sagacity, would have been content with such a deed after it was made and read to him if it were his intention to give Charity but a life estate. It would seem as if a deed which was supposed to convey a life estate but which made no mention of it would have naturally attracted the attention of even the lay mind of Moses Dean when it was read to him.

Under the claim that the meaning of the grantor was ambiguous, evidence of extrinsic facts was admitted under objection. The question really involved here is the legal effect which should be given to the language used in the deed. Parol evidence is not admissible to vary or contradict the legal effect of a conveyance. *Sanborn* v. *Loud,* 150 Mich. 154 (121 Am. St. Rep. 614). But waiving this objection we have been un-

able to find anything in the relations or surroundings of the parties which were disclosed which aids the theory of plaintiffs. It was shown that straight warranty deeds were executed by Moses Dean at the same time the present one was, conveying to each of his three other children 160 acres. This was for the purpose of showing that Moses Dean intended to make a different conveyance to Charity than he did to them. It certainly has that effect, but the face of Charity's deed shows exactly the same thing. Her deed shows beyond question that a conveyance in fee simple was not intended. It is also suggested that Moses Dean was not favorably impressed with his son-in-law, and it is quite likely he was not, as both counsel have suggested it, but, conceding that to be true, How does that fact make for or against plaintiffs' theory? We have not been able to see the connection and it has not been pointed out to us by counsel.

We have had many cases called to our attention in support of plaintiffs' theory, wherein property had been conveyed to a grantee and his children, or to a grantee and his heirs, and which hold that the first taker took a life estate, with the remainder to his children or heirs. An examination of these cases, however, shows that in many of them a life estate was expressly granted, or was implied from the restrictions placed upon the right of the first taker to deal with the property, or from some other phraseology in the deed which indicated a life estate. In others the estate granted had been declared a fee tail at the common law and thereby converted into a life estate by the force of the statute of the particular State. We have found no case, and none has been called to our attention by either counsel wherein the same language in a granting clause has been interpreted, although the briefs of both counsel show great industry. Being of the opinion that the language of the deed and the ex-

trinsic circumstances are insufficient to support plaintiffs' theory we are obliged to disagree with the trial court.

2. The defendant's main contention is that in making the deed an attempt was made to create a fee tail by the common law, and that by force of our statute (3 Comp. Laws 1915, § 11521), it was converted into a fee simple. By the common law a conveyance of lands and tenements to one and his heirs generally created an estate in fee simple. 16 Cyc. p. 601. A conveyance of lands and tenements to one and the heirs of his body created an estate in fee tail. 10 R. C. L. p. 656. Both were estates of inheritance and were made so by the use of the word "heirs." 2 Blackstone, 114. In the creation of an estate in fee tail it was not only necessary to use the word "heirs," but it was necessary to use the word "body," or some other word or words of procreation. 10 R. C. L. p. 658. Measured by these tests would the present deed have been adjudged at the common law as conveying to Charity an estate in fee tail? Both the words "heirs" and "body" are present in this deed. It has been said generally that an estate limited to one and the heirs of his body creates an estate tail and that it is not very important what the phraseology may be, aside from the words of inheritance and procreation. It is inferable from the record that Moses Dean was in this frame of mind when the deed was made: "I want Charity to have this farm, but I do not want any of it to go to my son-in-law. I want Charity and her children to have the benefit of it." Acting on this suggestion the conveyance was limited to Charity and the heirs of her body. But the inquiry at once arises, What did he mean by inserting the word "children"? Herein lies the only irritant in this theory. No direct answer can be made to this inquiry, but it is not unlikely that in the anxiety of the drawer of the deed

to limit it to Charity's children the word "children" was thrown in and used in a cumulative sense to make it certain and satisfy the grantor. Without the word "children" the wording would be the exact phraseology of a deed in fee tail at the common law. With it inserted, it adds nothing to the legal effect if a fee tail was intended because the word "children" has often been construed as a word of limitation. *Wheatland* v. *Dodge*, 10 Metc. (Mass.) 502. But aside from speculation as to intent, this much is certain. The deed contains the word "heirs," the essential word to make it an estate of inheritance. It also contains the word "body," the usual and appropriate word of procreation, and it limits in no uncertain way the estate to Charity and the heirs of her body. This makes a fee tail by the common law. The word "children" can be construed the same as "heirs" if both are construed as words of limitation and not of purchase. If this view of the wording of the deed is to prevail it becomes consistent with an estate in fee tail at the common law. While, of course, this theory has its debatable phase it has much fewer difficulties than any other theory which has been advanced, or which has occurred to us.

A discussion of the numerous authorities brought to our attention in the briefs has been omitted because the wording in all of them differs from the wording of this deed just enough to make them of doubtful value. Our conclusion is that an attempt was made to create an entailed estate and that it was converted by the foregoing statute into an estate in fee simple in Charity, as grantee. With this view the judgment of the trial court must be reversed and a new trial ordered, with costs to the defendant.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.